**FEDERAL LABOR RELATIONS AUTHORITY, Petitioner–Cross–Respondent,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE, UNITED STATES DEPARTMENT OF the NAVY, WASHINGTON, D.C., and Navy CBC Exchange, Construction Battalion Center, Gulfport, Mississippi, Respondents–Cross–Petitioners.**

**FEDERAL LABOR RELATIONS AUTHORITY, Petitioner–Cross–Respondent,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE, ARMY AND AIR FORCE EXCHANGE, DALLAS, TEXAS, Respondent–Cross–Petitioner.**

Nos. 90–4722, 90–4775.

United States Court of Appeals, Fifth Circuit.

Oct. 9, 1992.

Rehearing and Rehearing En Banc Denied Dec. 7, 1992.

Pamela P. Johnson, William E. Persina, Sol., William R. Tobey, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., for petitioner.

Elaine Kaplan, Washington, D.C., for amicus curiae Nat. Treasury Employees Union.

Stuart Kirsch, Asst. Gen. Counsel–Litigation, American Federation of Government Employees, AFL–CIO, College Park, Ga., Mark D. Roth, Gen. Counsel Asst. Federal Defender, AFL–CIO, Washington, D.C., for intervenor A.F.G.

Sandra W. Simon, Leonard Schaitman, William Kanter, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Robert Edwards, Asst. Gen. Counsel, Chief, Labor/Workers Compensation Law Branch, Army and Air Force Exchange Service, Dallas, Tex., for respondents.

Before KING, JOHNSON, and EMILIO M. GARZA, Circuit Judges.

JOHNSON, Circuit Judge:

In these two cases two labor organizations who represent federal employees requested that the federal agencies disclose to the unions the names and home addresses of all of the employees in the relevant bargaining units. The employer agencies refused, and the unions filed unfair labor practice charges with the Federal Labor Relations Authority (FLRA). The FLRA ordered the employers to disclose the names and addresses, and has applied to this Court for enforcement of its orders. The federal agency employers have petitioned for review of those orders.

I.  Facts and Procedural History

The facts of these two cases are virtually identical.  The United Food and Commercial Workers Union, Local 1657, represents a bargaining unit composed of all regular full-time and part-time employees, and all intermittent employees of the Navy Exchange in Gulfport, Mississippi.  In August 1988 the union requested that the Navy Exchange disclose to it the names and home addresses of all of the employees in its bargaining unit.  The Navy Exchange refused the union's request.  The union responded by filing an unfair labor practice charge with the FLRA.  The FLRA ruled in favor of the union, and ordered the Navy Exchange to cease and desist from refusing to furnish the names and home addresses of all employees in the bargaining unit the union represents.  In case No. 90–4722 the FLRA and the Navy Exchange seek enforcement and review of that order.

The American Federation of Government Employees, Local 1345, represents a consolidated, worldwide bargaining unit composed of all regular full-time and part-time employees, and all intermittent employees of the Army and Air Force Exchange Service, which is headquartered in Dallas, Texas, and operates a facility at Lowry Air Force Base in Colorado.  In October 1988 the union requested that the Exchange disclose to it the names and home addresses of all of bargaining unit employees working at the Post Exchange at Lowry AFB.  The Exchange denied the request, and the union filed and unfair labor practice charge with the FLRA.  The FLRA ordered the Exchange to disclose the names and addresses.  In No. 90–4775 the FLRA and the Exchange seek enforcement and review of the FLRA's order.

## II. Discussion

Because the disputes in these cases arise out of the Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, it is helpful to begin with a review of that statute and certain of the duties and obligations it places on labor organizations and federal employers.

### A. *The Federal Service Labor–Management Relations Statute*

In adopting the Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, (the "FLRS"), Congress observed that

experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them safeguards the public interest, contributes to the effective conduct of public business, and facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment.

5 U.S.C. § 7101(a)(1). "Therefore," the Congress declared, "labor organizations and collective bargaining in the civil service are in the public interest."

To facilitate collective bargaining in the public sector, the FLRS provides that a labor organization may serve as the exclusive bargaining representative of a group of public employees as long as it fulfills certain duties. In particular, the FLRS provides that "[a]n exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership." 5 U.S.C. § 7114(a)(1). That is, the labor organization must represent the interests not only of its dues-paying members, but also the interests of those employees in the unit who choose not to join the union. Thus, the requests by the unions in this case for the names and addresses of employees in the relevant bargaining units were requests designed to allow the union to con-

tact not its own members, but rather the other employees in the units, so that the unions could determine what issues were of concern to those employees.

The FLRS also imposes obligations on the employer. For instance, in order to facilitate the bargaining process, federal employers are required

to furnish to the exclusive representative involved, or its authorized representative, upon request and to the extent not prohibited by law, data which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining.

5 U.S.C. § 7114(b)(4)(B).

The FLRA has taken the position that the names and addresses of employees in the bargaining unit is data which is "reasonably available and necessary" to the process of collective bargaining. The FLRA first took this position in its decision in *Farmers Home Administration Finance Office v. American Federation of Government Employees, Local 3354,* 23 FLRA 788 (1986) (*"Farmers Home Administration"*), when it observed that

[s]ection 7114(a)(1) of the [FLRS] provides that an exclusive representative is responsible for representing the "interests of all employees in the unit it represents without discrimination and without regard to labor organization membership." Under this provision, a union's statutory responsibilities extend to all bargaining unit members. It is obvious that a union must be able to identify and communicate with those bargaining unit members if it is to adequately represent them.

*Id.* at 796. The FLRA thus concluded that disclosure of the names and addresses was necessary because it would "enable the Union to communicate effectively and efficiently, through direct mailings to individual employees." *Id.* Moreover, the FLRA held, the existence of alternative means of communication—such as desk drops, direct distributions, meetings, bulletin boards, and direct personal contacts—"is insuffi-

cient to justify a refusal to release the [names and addresses]." *Id.* This is so because the communication between unit employees and their exclusive representative which would be facilitated by release of names and home addresses ... is fundamentally different from other communication through alternative means which are controlled in whole or in part by the [employer] agency. When using direct mailings, the content, timing, and frequency of the communication is completely within the discretion of the union and there is no possibility of agency interference in the distribution of the message. Further, direct mailings reach unit employees in circumstances where those employees may consider the union's communication without regard to the time constraints inherent in their work environments, and in which any restraint the employee may feel as a result of the presence of agency management in the workplace is not present. *Id.* at 796–97. The FLRA has recently reaffirmed its position in *United States Dep't of the Navy, Portsmouth Naval Shipyard v. International Federation of Professional & Technical Engineers, Local 4*, 37 FLRA 515, 523 (1990) (*"Portsmouth"*), and its orders in the two cases before this Court were based on the decisions in *Farmers Home Administration* and *Portsmouth*.

The FLRA's determination that the names and addresses are necessary for full and proper collective bargaining has been uniformly upheld in the federal courts of appeals. Initially, because the FLRA's position is one interpreting its own enabling statute, its interpretation cannot be upset by the federal courts as long as it is a "reasonable and defensible construction" of the statute. *Bureau of Alcohol, Tobacco, and Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). That is, the FLRA's interpretation of the FLRS must be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.... [A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the ad-

ministrator of an agency." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). *See also Department of Justice v. FLRA*, 939 F.2d 1170, 1173 (5th Cir.1991) (FLRA is entitled to special deference when it exercises its special function of applying the general provisions of the FLRS to the complexities of federal labor relations).

There can be little question that the FLRA's position is a reasonable one. Every court of appeals that has reviewed the FLRA's determination that employees' names and address are necessary has found that to be a reasonable construction of the statute, and has upheld the FLRA's position. Most recently, the Ninth Circuit has ruled that it was not unreasonable for the FLRA to conclude that the employees' names and home addresses "are necessary so that the union's direct-mail literature can reach employees free of the mediation of the employer-controlled workplace." *FLRA v. United States Dep't of the Navy, Navy Resale & Services Support Office*, 958 F.2d 1490, 1494 (9th Cir.1992). Similarly, the Second Circuit has recently held that "alternatives to [the] direct communication afforded by mailings to all unit members— such as workplace visits or the use of bulletin boards—are not such effective alternatives as to make the FLRA's insistence on [home] mailings an arbitrary or capricious position." *FLRA v. United States Dep't of Veterans Affairs, Veterans Affairs Medical Center*, 958 F.2d 503, 507–08 (2d Cir. 1992). While the D.C. Circuit also cited the advantages of home mailings over alternative means of communication, that Court further noted that the FLRA's position "corresponds to that of private sector labor relations law." *FLRA v. United States Dep't of Treasury, Financial Management Service*, 884 F.2d 1446, 1449 (D.C.Cir. 1989), *cert. denied*, 493 U.S. 1055, 110 S.Ct. 863, 864, 107 L.Ed.2d 947, 948 (1990). Accordingly, the D.C. Circuit held the FLRA's interpretation was reasonable and should not be disturbed. *Id.*

At least three other circuits have also embraced the FLRA's position. *See Unit-*

ed States Dep't of the Navy, Philadelphia Naval Shipyard v. FLRA, 840 F.2d 1131, 1137–39 (3d Cir.), *cert. denied,* 488 U.S. 881, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988) ("Because a union must have the information necessary to fulfill its statutory responsibility to represent all employees in the unit, we conclude that the FLRA did not err in holding that the requested information is necessary ...");[1] *United States Dep't of Agriculture v. FLRA,* 836 F.2d 1139, 1142 (8th Cir.1988), *vacated and remanded,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989) (FLRA's position is not arbitrary or capricious); *United States Dep't of Health and Human Servs., Social Security Administration v. FLRA,* 833 F.2d 1129, 1131–34 (4th Cir.1987) ("Communication between the Union and bargaining unit employees appears to be as important to the performance of the Union's representational duties in the interim between negotiations as it is during negotiations[, and] ... the Union cannot discharge its [statutory] obligation unless it is able to communicate with those in whose behalf it acts."). Indeed, in the face of this seamless expanse of authority, the federal agencies involved in this case do not contest the FLRA's position. They expressly acknowledge that the weight of authority supports the FLRA's view, and thus no longer dispute that the names and addresses of their employees are necessary to full and proper collective bargaining.

B. *The Previous Consensus that Employees' Names and Addresses Must be Disclosed*

■ Given that the parties, the FLRA, and the courts uniformly agree that the employees' names and home addresses are necessary to the full and proper conduct of collective bargaining, the question then be-

comes whether disclosure of those names and addresses is, in the words of the FLRS, "prohibited by law." 5 U.S.C. § 7114(b)(4). Like the question of whether the employees' names and addresses are "necessary," at one time there was a broad consensus on the part of the FLRA and the federal courts that disclosure of those names and addresses was *not* prohibited by law.

The agencies have contended, over the life of this dispute, that disclosure of their employees' names and home addresses is "prohibited by law"—in particular, that disclosure is prohibited by the Privacy Act, 5 U.S.C. § 552a. In general, the Privacy Act, 5 U.S.C. § 552a, prohibits the disclosure of personal information about federal employees without their consent. 5 U.S.C. § 552a(b). The Privacy Act includes several exceptions, however, and it was well settled that one of these exceptions provided for the disclosure of the employees' names and addresses. Section 552a(b)(2) of the Privacy Act[2] states that the Privacy Act does not bar disclosures of information "required under section 552 of this title"— a reference to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). As noted, at one time every court that considered the question agreed that the FOIA did not prohibit disclosure of the employees' names and addresses.

■ Generally speaking, the FOIA, with certain enumerated exceptions, "embodies 'a general philosophy of full agency disclosure'." *Halloran v. Veterans' Administration,* 874 F.2d 315, 318 (5th Cir.1989) (quoting *Department of the Air Force v. Rose,* 425 U.S. 352, 360, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976)). One of the exceptions to the FOIA's directive of full disclosure encompasses "personnel and medical files and similar files the disclosure of which would constitute a clearly unwar-

---

1. The Third Circuit has recently reaffirmed this conclusion. In *FLRA v. United States Dep't of the Navy, Navy Ships Parts Control Center,* 966 F.2d 747 (3d Cir.1992) (en banc), our colleagues on that Court, sitting en banc, again ruled that "the FLRA's interpretation of what is necessary does constitute a permissible construction of the Labor Statute." 966 F.2d at 753.

2. The Privacy Act provides that

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be required under section 552 of this title ...
5 U.S.C. 552a(b)(2).

ranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Determining whether disclosure of some piece of information would constitute a "clearly unwarranted invasion of personal privacy," and would therefore be exempt from disclosure under the FOIA, requires balancing the specific privacy interests implicated by the information against the particular public interests that may be served—or disserved—by disclosure of the information. *Halloran,* 874 F.2d at 319. This Court has noted that "Congress contemplated that in applying these exemptions, courts would reconcile these competing interests by balancing all while ignoring none." *Id.* To this end the Congress sought to provide a "workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." *Id.*

Although the Fifth Circuit did not address the issue, the courts of appeals that weighed the private and public interests involved in disclosure of employees' names and addresses to collective bargaining representatives uniformly held that the balance tipped in favor of the public interests in collective bargaining, and therefore in favor of disclosure. *See United States Dep't of the Navy, Philadelphia Naval Shipyard v. FLRA,* 840 F.2d 1131, 1137 (3d Cir.), *cert. denied,* 488 U.S. 881, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988); *United States Dep't of the Air Force, Scott A.F.B. v. FLRA,* 838 F.2d 229, 232–33 (7th Cir.), *cert. denied,* 488 U.S. 881, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988); *United States Dep't of Agriculture v. FLRA,* 836 F.2d 1139, 1143 (8th Cir.1988), *vacated and remanded,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989); *United States Dep't of Health and Human Servs., Social Security Administration v. FLRA,* 833 F.2d 1129, 1135 (4th Cir.1987); *American Federation of Government Employees, Local 1760 v. FLRA,* 786 F.2d 554, 556–57 (2d Cir.1986).

Several considerations produced this consensus. Initially, the balancing itself does not present a particularly close question. On the one side of the scales is the weighty public interest in labor organizations and collective bargaining, an interest expressly identified and protected by Congress in the FLRS. Indeed, the Supreme Court has recognized that "[i]n passing the [FLRS] Congress unquestionably intended to strengthen the position of federal unions and to make the collective-bargaining process a more effective instrument of the public interest." *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 107, 104 S.Ct. 439, 449, 78 L.Ed.2d 195 (1983). On the other side of the scales, on the other hand, is a considerably lighter interest in privacy. While all of the courts of appeals agreed that employees had at least some legitimate interest in keeping private their names and home addresses, those courts consistently concluded that disclosure of that information would have only a modest or marginal effect on employees' privacy. *Dep't of the Navy, Philadelphia Naval Shipyard,* 840 F.2d at 1136 ("the invasion of privacy effected by such disclosure [of names and addresses] is not as serious as it would be by the disclosure of more personal information"); *Dep't of the Air Force, Scott A.F.B.,* 838 F.2d at 232 ("Both the secrecy and the seclusion components of privacy ... are minuscule here."); *Dep't of Agriculture,* 836 F.2d at 1143 (average employee has only modest privacy interest in his home address); *AFGE, Local 1760,* 786 F.2d at 556 ("the privacy interest of the average employee in his address is not particularly compelling").

About the most significant intrusion into employees' privacy that could be identified by these courts—and by the agencies in this case—would be a possible increase in mail solicitations. As Judge Easterbrook has noted, however,

It is hard to see how the disclosure of home addresses could be "clearly unwarranted" as a rule. Most home addresses are in the telephone book, freely available to anyone interested. They are widely disseminated on mailing lists. And the mail that comes in response does not substantially impinge on seclusion; the addressee may send it to the circular file.

*Dep't of the Air Force, Scott A.F.B.,* 838 F.2d at 232. To the same effect is the Third Circuit's recognition that "unwanted

mailings are an unfortunate fact of our daily existence," but that "our annoyance with them does not rise to a privacy interest that outweighs a statutorily mandated disclosure interest." *FLRA v. Department of the Navy, Navy Ships Parts Control Center*, 966 F.2d 747, 759 (3d Cir.1992) (en banc).

In addition, several of the courts of appeals took notice of the fact that employers in the private sector are required to disclose the names and home addresses of their employees to the unions that represent those employees,[3] and there is no apparent reason to apply different a different rule here. It is well recognized that the FLRS is modeled on private labor law, *see Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 92–93, 104 S.Ct. at 441–42, and that "[p]rivate sector labor-relations case law, although not strictly binding as precedent, generally provides strong guidance in parallel public sector matters." *Dep't of Treasury, Financial Management Service*, 884 F.2d at 1458 (Ginsburg, J., concurring). *See also Dep't of Health & Human Servs., Social Security Administration*, 833 F.2d at 1132, 1132 n. 4 (noting that Labor Management Relations Act of 1947, which governs private sector labor relations, shares similar purposes and concerns with the FLRS); *National Treasury Employees Union v. FLRA*, 810 F.2d 295, 299–300 (D.C.Cir.1987) ("Congress was fully aware of the analogy between the FLRS and the National Labor Relations Act, ... Congress paid close attention to judicial precedent in private sector labor law when drafting the [FLRS].").

Finally, the Supreme Court has repeatedly cautioned that the exceptions to the FOIA are to be construed narrowly, in favor of full disclosure. *See, e.g., Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *EPA v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). As Chief Justice Rehnquist has explained,

> [t]he system of disclosure established by the FOIA is simple in theory. A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b).... Nonetheless, the mandate of the FOIA calls for broad disclosure of Government records, and for this reason we have consistently stated that FOIA exemptions are to be narrowly construed.

*Department of Justice v. Julian*, 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988) (citations and internal quotation marks omitted).

In light of all of these considerations, it is not surprising that the FLRA and the courts of appeals all agreed that the FLRS and the FOIA together required the disclosure of employees' names and addresses. The only surprising thing is that this issue—seemingly so well settled—is once again before the courts of appeals, and that the prior consensus has disappeared.[4] The

---

**3.** *See, e.g., NLRB v. Associated Gen'l Contractors*, 633 F.2d 766, 773 (9th Cir.1980) (disclosure of names and addresses required under 29 U.S.C. § 158(a)(5)'s duty to bargain in good faith); *NLRB v. Pearl Bookbinding Co.*, 517 F.2d 1108, 1113 (1st Cir.1975) (same); *United Aircraft Corp. v. NLRB*, 434 F.2d 1198, 1204 (2d Cir.1970) (same), *cert. denied*, 401 U.S. 993, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971). *Cf. NLRB v. Wyman-Gordon*, 394 U.S. 759, 767, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969) (employer must provide candidate unions with names and addresses prior to election of bargaining representative).

**4.** In addition to the case pending before this Court, cases raising the identical issue are pending or have recently been decided in every other Circuit. In its resurrected state the issue has proved far more divisive than it was previously, as it has produced several two to one decisions, as well as a sharp split among the Circuits.

The District of Columbia Circuit was the first to revisit this issue, in *FLRA v. United States Dep't of the Treasury, Financial Management Serv.*, 884 F.2d 1446 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1055, 110 S.Ct. 863, 864, 107 L.Ed.2d 947, 948 (1990). The panel of the D.C. Circuit that decided this issue actually handed down three opinions. Judge Williams authored the opinion of the Court denying enforcement of the FLRA's order; Judges Sentelle and Ruth Bader Ginsburg each authored concurring opinions.

The First, Second, and Seventh Circuits, following the decision of the D.C. Circuit, have also denied enforcement of the FLRA's order. *FLRA v. United States Department of the Navy*, 975 F.2d 348 (7th Cir.1992); *FLRA v. United States Dep't of Veterans Affairs, Veterans Affairs Medical Center*, 958 F.2d 503 (2d Cir.1992); *FLRA v. United States Dep't of the Navy, Naval*

reason for the resurrection of this issue, and the emerging split among the Circuits, is the argument of the federal employers that a recent decision of the Supreme Court alters the balance of public and private interests, such that disclosure of employees' names and address is now forbidden.

### C. *The Supreme Court's Decision in* Reporters' Committee

In *Department of Justice v. Reporters' Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), a CBS news correspondent requested the Federal Bureau of Investigation to disclose, pursuant to the Freedom of Information Act, information concerning the criminal records of four members of the Medico family of Philadelphia, a family suspected of ties to organized crime. The FBI complied with the request as to three of the Medicos, each of whom was deceased, but refused the request relating to the fourth Medico. The correspondent brought an action to compel disclosure of the information. The Supreme Court held that the FBI was not required to release the information sought.

The Court reaffirmed that the FOIA's "basic policy [is one] of full agency disclosure unless information is exempted under clearly delineated statutory language." 489 U.S. at 773, 109 S.Ct. at 1481 (citations and internal quotation marks omitted). This basic policy, the Court explained, "focuses on the citizens' right to be informed about 'what their government is up to.'" *Id.* That is, "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." *Id.* at 774, 109 S.Ct. at 1482. "Thus," the Court held,

> whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny, rather than on the particular purpose for which the document is being requested.

*Id.* at 772, 109 S.Ct. at 1481. Because release of criminal history information about the Medico family would not open any Government activities to the sharp eye of public scrutiny, release of that information would not serve the type of interest protected by the FOIA. Accordingly, in conducting the balancing required by the FOIA's exemption 7(C), the Medico's privacy interest necessarily outweighed the (non-existent, or at least non-cognizable) disclosure interest.

### D. *Balancing Public and Private Interests After* Reporters' Committee

The employer federal agencies now argue, and the dissent agrees, that the Supreme Court's opinion in *Reporters' Committee* alters the balance of public and private interests by eliminating from consideration the public interest—embodied in the FLRS—in collective bargaining. That

*Communications Unit Cutler*, 941 F.2d 49 (1st Cir.1991). The Sixth Circuit has recently issued a summary opinion adopting the reasoning the D.C., First, and Second Circuits, denying enforcement of the FLRA's order. *FLRA v. Dep't of the Navy, Naval Resale Activity*, 963 F.2d 124 (6th Cir.1992).

A panel of the Third Circuit initially denied enforcement of the FLRA's order, but that Court decided to rehear the issue en banc, and therefore vacated the panel opinion and withdrew it from the bound volume of the Federal Reporter. *See FLRA v. United States Dep't of the Navy, Navy Ships Parts Control Center*, 944 F.2d 1088 (3d Cir.1991), *vacated and withdrawn.* Sitting en banc, the Third Circuit reversed the panel, and has now granted the FLRA's petition for enforcement of its order. *FLRA v. United States*

*Dep't of the Navy, Navy Ships Parts Control Center*, 966 F.2d 747 (3d Cir.1992).

A panel of the Fourth Circuit also granted enforcement of the FLRA's order, but that Court has also decided to rehear the issue en banc, and has therefore vacated the panel opinion. *FLRA v. United States Dep't of Commerce, NOAA*, 954 F.2d 994 (4th Cir.1992), *vacated; petition for rehearing granted* (4th Cir. April 22, 1992).

A panel of the Ninth Circuit has also granted enforcement of the FLRA's order. *FLRA v. United States Dep't of the Navy, Navy Resale & Services Support Office*, 958 F.2d 1490 (9th Cir. 1992). A petition for rehearing en banc is currently pending before that Court.

Finally, similar cases are currently pending before the Eighth, Tenth, and Eleventh Circuits.

is, because disclosure of the employees' names and addresses advances the public interest served by the FLRS—protection and promotion of collective bargaining—but does not advance the public interest served by the FOIA—opening agency action to the light of public scrutiny—disclosure of the employees' names and addresses is no longer permissible. The agencies and the dissent have read too much into *Reporters' Committee.*

Initially, of course, it must be acknowledged that if one applies the restrictions announced in *Reporters' Committee*—confining cognizable interests in disclosure to those that open agency action to the light of public scrutiny—then disclosure clearly would be prohibited in this case. Release of the employees' names and addresses would not in any meaningful way open agency action to the light of public scrutiny; the only good reason to disclose those names and addresses is to allow the unions to fulfill their statutory mandate to represent the employees in their bargaining units. Thus, if letting the public know what the government is up to is the only interest that may be considered in favor of disclosure, then the employees' privacy interests, however limited they may be, would nonetheless prevail, and would prohibit disclosure.

However, *Reporters' Committee* does not control the outcome of this case. This is so for two reasons. First, the exemption addressed by *Reporters' Committee* is not the same exemption at issue in this case. *Reporters' Committee* determined the scope of Exemption 7(C) while we construe Exemption 6. While the language in these two exemptions is somewhat similar, the Supreme Court pointed out that there are significant enough differences between them that Exemption 7(C) should be applied more broadly than Exemption 6. *Reporters' Committee* at 756, 109 S.Ct. at 1473. The Court first recognized that while Exemption 6 mandates that the invasion of privacy be *"clearly* unwarranted," Exemption 7(C) requires that the invasion of privacy be merely "unwarranted." The Court then observed that while Exemption 6 applies to disclosures which "would consti-tute" an invasion of privacy, Exemption 7(C) pertains to disclosures which "could reasonably be expected to constitute" such an invasion. Because of these differences, the Supreme Court determined that "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law-enforcement purposes [under Exemption 7(C) ] is somewhat broader than the standard applicable to personnel, medical, and similar files [under Exemption 6]." *Id.* at 756, 109 S.Ct. at 1473.

Second, unlike the complainants in *Reporters' Committee,* the unions' disclosure requests in this case do not arise under the FOIA. They are not FOIA requests. Rather, their requests originate from within the FLRS and its Congressionally endorsed framework for protecting and promoting collective bargaining. As a result, *Reporters' Committee* is not controlling because "[t]hat case did not present an occasion to evaluate the [FLRS's] explicit policy favoring collective bargaining as in the public interest, nor the interrelated rights and responsibilities imposed by Congress on an exclusive bargaining representative." *FLRA v. United States Dep't of the Navy, Navy Ships Parts Control Center,* 966 F.2d 747, 757 (3d Cir.1992) (en banc). In sum, *Reporters' Committee* has absolutely nothing to say about the FLRS, or the situation that arises when disclosure is initially required by some statute other than the FOIA, and the FOIA is employed only secondarily.

Moreover, even the courts that have denied enforcement of the FLRA's orders have recognized that *Reporters' Committee* does not specifically address the issues raised by this case. The rule announced in *Reporters' Committee* that "the identity of the requesting party has no bearing on the merits of his or her FOIA request,"

does not necessarily mean that there is no exception to the general rule that the public interest in disclosure under FOIA should be defined exclusively in terms of finding out what the "government is up to." Nothing in the [rule announced by *Reporters' Committee* ] suggests that

the Court had considered and rejected the relevance of public interest objectives identified by Congress in other disclosure statutes. Moreover, the argument here is not that the *identity* of the requester should alter the disclosure interest, but rather that a congressional (non-FOIA) disclosure mandate might do so.

*Dep't of Treasury, Financial Management Service*, 884 F.2d at 1453.

The agencies argue, however, that the "plain language" of the FLRS, the Privacy Act, and the FOIA do not allow for any variations from the norms announced in *Reporters' Committee*. They suggest that in restricting its reach to disclosures not otherwise "prohibited by law" the FLRS incorporates unmodified the Privacy Act and the FOIA, and the restrictions that apply to FOIA requests. Thus, they contend, it would require an "imaginative reconstruction" of the Privacy Act and the FOIA to be able to introduce collective bargaining values into the balancing process.

The obvious flaw in the agencies' position, of course, is that prior to the decision in *Reporters' Committee*, every court that read the "plain language" of the FLRS, the Privacy Act, and the FOIA concluded that that language required the disclosure of employees' names and addresses. Whatever else *Reporters' Committee* may have done, it certainly did not amend the language of the FLRS, the Privacy Act, or the FOIA. Thus, it can hardly be said that the "plain language" of those statutes forbids disclosure, or that to bring into consideration the strong public interest in collective bargaining would require any imaginative reconstruction of those statutes. All that is required is the recognition that *Reporters' Committee* does not speak to the situation that arises when the Privacy Act and the FOIA are incorporated into some other statutory scheme which contemplates disclosure of agency records for purposes other than opening agency action to the light of public scrutiny.

Put differently—and wholly apart from the "plainness" of Congress' language—it certainly cannot be the case that Congress intended to have it both ways. That is, it is not plausible to suggest both 1) that Congress intended for names and addresses of employees to be disclosed, and 2) that Congress intended that the names and addresses of employees not be disclosed. It must be one or the other. Previously, as noted above, every court to consider the question had held that the correct position was that disclosure was required, a position which presumably gave effect to Congress' intention, as expressed in the FLRS and its incorporation of the Privacy Act and the FOIA. As with the language of the statutes, whatever else *Reporters' Committee* may have done, it certainly did not alter the Congressional intent embodied in these statutes. Thus, there simply is no merit in the agencies' suggestion that by drafting the FLRS as it did, Congress intended to prohibit disclosure of the names and addresses of employees.

It therefore becomes apparent that the agencies' position is not at all as "plain" as they suggest. They do not argue that the language of the FLRS plainly prohibits disclosure, but rather that the language of the FLRS has somehow *become* "plain" in the light of *Reporters' Committee*—such that it now "plainly" prohibits disclosure—despite the fact that *Reporters' Committee* has nothing at all to say about the FLRS. Again, whatever may be urged with respect to the effect of *Reporters' Committee*, that decision certainly does not mean— indeed, it does not anywhere suggest—that the strong public interest in collective bargaining no longer exists, or that that interest has diminished in value. At most, *Reporters' Committee* forbids the federal courts to take that interest into account when striking the balance between public and private interests.

We do not think, however, that *Reporters' Committee* goes even that far. Rather, we think it clear that the Supreme Court's opinion in *Reporters' Committee* is limited to the situation that arises when disclosure is sought under the FOIA alone, such that only the interests served by the FOIA may be included in the balancing. *Reporters' Committee* simply does not ap-

ply when disclosure is commanded by some statute other than the FOIA, a statute which borrows the FOIA's disclosure calculus for another purpose. When, as here, disclosure is sought through the FOIA only because the FOIA has been incorporated into another statute as a mechanism for disclosure of information, it is entirely proper and necessary—if all of Congress' aims are to be achieved—to weigh into the balance the interests recognized by the statute which generates the request for information. *See, e.g., Dep't of the Navy, Navy Resale & Services Support Office,* 958 F.2d at 1496 ("We doubt that Congress intended that its statement of the public interest in section 7101(a)(1) [of the FLRS] be ignored when examining the public interest element incorporated into section 7114(b)(4) through [the] FOIA.").

Indeed, it would require a particularly convoluted line of reasoning to conclude that the Congress, while 1) expressly recognizing the great public interest in collective bargaining, 2) acting to protect that interest, and 3) providing for disclosure of information according to a "formula which encompasses, balances, and protects all interests," would nevertheless forbid the federal courts to consider the public interest in collective bargaining when balancing the interests favoring and opposing disclosure of information which is conceded to be necessary to the full and proper conduct of collective bargaining.[5]

■ In sum, we hold that *Reporters' Committee* does not require the federal courts, when balancing interests favoring and opposing disclosure, to ignore public interests other than those embodied in the FOIA when the disclosure request originates from some statute other than the FOIA. In such a case, it is proper for the federal court to consider the public interests embodied in the statute which generates the disclosure request. This approach fully accords not only with the FLRS—with its explicit declaration that it seeks to promote collective bargaining and its direction to unions that they represent nonmember employees as faithfully as they do their members—but also fully accords with Congress' aim in establishing the FOIA—to

---

5. Our holding should alleviate one other concern raised by the agencies. As they correctly point out, *Reporters' Committee* held that the identity of the person requesting disclosure under the FOIA makes no difference in the balancing of interests. 489 U.S. at 770, 109 S.Ct. at 1480. The agencies go on to argue that if they are required to disclose the names and addresses of their employees to the unions involved here, that they will therefore be required to disclose those names and addresses to anyone, including persons who may use the names and addresses to annoy or harass the employees with unwanted mail solicitations or other intrusions into the employees' privacy.

There are three flaws in the agencies' attempt to cause alarm. First, there is no evidence in the record before us that suggests that the agencies' concern is valid or at all serious. Indeed, there is no suggestion at all in the record that in the past, when disclosure was uniformly required, that any great evils flowed from that disclosure. Second, if there are individual employees who have particular or specially heightened concerns about their safety or privacy, they may individually request that their names and home addresses not be released. The Eighth Circuit has previously authorized such a procedure, and it provides a workable procedure for those unusual cases in which an employee's privacy interest is more substantial than the norm. *See, e.g., United States Dep't of Agriculture v. FLRA,* 836 F.2d 1139, 1144 (8th Cir.1988), *vacated and remanded,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989). Similarly, if there is a class of employees who have particular or specially heightened concerns about their safety or privacy, it may be such concerns alter the balancing of public and private interests.

Third, the agencies have undoubtedly overstated the degree to which disclosure of the names and addresses to the unions would require disclosure to other entities. The agencies have confused the *identity* of the person requesting information with the *interest* of the person requesting information. *Reporters' Committee* clearly prohibits distinguishing among requests solely on the basis of the identity of the person making the request. What *Reporters' Committee* does *not* speak to is distinguishing among requesters on the basis of the interests they assert. That is, when disclosure is sought (and ordered) under some statute other than the FOIA, then only someone who can invoke that statute will be entitled to that disclosure. In this case, for instance, the FLRS authorizes disclosure only to labor organizations. A direct mail merchandiser does not occupy the same position, and therefore would not have an equal claim to disclosure. *See Dep't of the Navy, Navy Ships Parts Control Center,* 966 F.2d at 755; *Dep't of the Navy, Navy Resale & Services Support Office,* 958 F.2d at 1495.

provide a workable formula "which encompasses, balances, and protects all interests." Indeed, we can see no basis on which to hold that although Congress expressly recognized the value to the nation of collective bargaining, it intended to exclude consideration of that value from the decision to disclose or not to disclose to labor unions the names and addresses of public sector employees.[6]

### III. Conclusion

For the reasons stated, this Court holds that the public interest in collective bargaining outweighs the employees' private interests in the nondisclosure of their names and addresses. Accordingly, disclosure of the employees' names and addresses would not constitute a clearly unwarranted invasion of privacy, and is not prohibited by the Privacy Act. The FLRA's application for enforcement of its orders compelling disclosure of the names and addresses is GRANTED. The agencies' cross-petitions for review of those orders are DENIED.

ENFORCEMENT GRANTED.

EMILIO M. GARZA, Circuit Judge, dissenting:

Because application of *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) to this

case bars disclosure of the names and addresses of public sector employees, I respectfully dissent.[1]

The majority holds that *"Reporters Committee* does not require the federal courts, when balancing interests favoring and opposing disclosure, to ignore public interests other than those embodied in the FOIA when the disclosure request originates from some other statute other than the FOIA." Maj. op. at 1115. I disagree.

The language of the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101–7135 (the "FLRS"), provides that a federal agency must furnish the exclusive representative data "reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining [to the extent not prohibited by law]." 5 U.S.C. § 7114(b)(4)(B). The D.C., First, Second, Sixth, and Seventh Circuits have held that "[t]he broad cross-reference in 5 U.S.C. § 7114(b)(4)—'to the extent not prohibited by law'—picks up the Privacy Act *unmodified."* [2] *Treasury,* 884 F.2d at 1457 (Ginsburg, J., concurring) (emphasis added). "The Privacy Act[, however,] excepts from its prohibition against disclosure information that must be made available under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, 5 U.S.C. § 552a(b)(2) ...." *Veterans Affairs,* 958 F.2d at 505. "Subsection 552(b)(6) ("ex-

---

**6.** Because we hold that disclosure of the employees' names and home addresses is proper under the FOIA exception to the Privacy Act, we need not address the parties' arguments concerning disclosure of that information under the "routine use" exception to the Privacy Act, 5 U.S.C. § 552a(b)(3).

**1.** *See FLRA v. United States Dep't of the Navy, Navy Exchange,* 975 F.2d 348 (7th Cir.1992); *FLRA v. Dep't of the Navy, Naval Resale Activity,* 963 F.2d 124 (6th Cir.1992) (adopting the reasoning of the First, Second, and D.C. Circuits on this issue); *FLRA v. United States Dep't of Veterans Affairs,* 958 F.2d 503 (2d Cir.1992); *FLRA v. United States Dep't of the Navy, Naval Communications Unit Cutler,* 941 F.2d 49 (1st Cir.1991); *FLRA v. United States Dep't of Treasury,* 884 F.2d 1446 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990). *But see FLRA v. United States Dep't of the Navy, Navy Ships Parts Control Center,* 966 F.2d 747

(3d Cir.1992) (en banc); *FLRA v. United States Dep't of the Navy, Navy Resale and Services Support Office,* 958 F.2d 1490 (9th Cir.1992); *FLRA v. Dep't of Commerce,* 954 F.2d 994 (4th Cir.), *vacated and petition for reh'g granted,* 966 F.2d 134 (4th Cir.1992).

**2.** *See Navy Exchange,* 975 F.2d at 354 ("[I]t seems to us ... that *the Labor Act itself* by authorizing disclosure 'not prohibited by law' directs us to the Privacy Act, which in turn directs us to FOIA."); *Veterans Affairs,* 958 F.2d at 505 ("Concededly the Act affording disclosure 'to the extent not prohibited by law' implicates the prohibitions contained in the Privacy Act of 1974, 5 U.S.C. § 552a, which generally bars disclosure of personal information, absent consent of the individual affected."); *Naval Communications,* 941 F.2d at 52 ("There is no dispute but that the employees' addresses sought here fall within the general Privacy Act protection of [5 U.S.C.] § 552a(b).").

emption 6") of the FOIA[, in turn,] exempts from disclosure 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.' " *Naval Communications*, 941 F.2d at 52 (quoting 5 U.S.C. § 552(b)(6)).

> Once placed wholly within the FOIA's domain, the union requesting information relevant to collective bargaining stands in no better position than members of the general public. True, unions have a special interest in identifying and communicating with persons in the bargaining unit, an interest initially accommodated by 5 U.S.C. § 7114(b)(4). The bargaining process facilitation interest is ultimately unavailing, however, because it 'falls outside the ambit of the public interest that the FOIA was enacted to serve,' *i.e.*, the interest in advancing 'public understanding of the operation or activities of the government.' *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 775, 109 S.Ct. 1468, 1482–83, 103 L.Ed.2d 774 (1989).

*Treasury*, 884 F.2d at 1457 (Ginsburg, J., concurring).[3]

Nonetheless, the majority argues that "*Reporters Committee* does not control the outcome of this case" because "*Reporters Committee* determined the scope of Exemption 7(C) while we construe Exemption 6." Maj. op. at 1113. While I agree that *Reporters Committee* deals with Exemption 7(C) and not Exemption 6, I disagree that *Reporters Committee* determines *only* the scope of Exemption 7(C). The difference between Exemption 6 and 7(C) goes *only* to the degree of personal privacy needed to outweigh the public interest; the public interest factor remains the same under both exemptions.

> Although the context in *Reporters Committee* was the special privacy exemption for law enforcement records, exemption 7(C), we see no reason why the *character* of the disclosure interest should be different under exemption 6. While exemption 6 precludes only "a *clearly* unwarranted invasion of personal privacy" (emphasis added), that difference between it and exemption 7(C) goes only to the *weight* of the privacy interest needed to outweigh disclosure.

*Treasury*, 884 F.2d at 1451–52; *see Reporters Committee*, 489 U.S. at 767, 109 S.Ct. at 1479 ("Although the opinion dealt with Exemption 6's exception for 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy,' and our opinion today deals with Exemption 7(C), much of our discussion in *Rose* is applicable here.").[4] "What *Reporters*

---

**3.** *See Navy Exchange*, 975 F.2d at 355 ("What *Reporters Committee* adds to this analysis is that the *only* public interest cognizable under FOIA is the interest of the citizenry in obtaining information about the activities of its government."); *Veterans Affairs*, 958 F.2d at 512 ("[W]hether FOIA authorizes disclosure requires consideration—once a privacy interest is implicated—of only those policy goals and values it is designed to foster. Nowhere in the [FLRS] does its language indicate that disclosure calculus required by FOIA should be modified."); *Naval Communications*, 941 F.2d at 54 ("We agree with the D.C. Circuit that, in light of *Reporters Committee*, disclosure of the addresses to the unions is prohibited by the Privacy Act, as it [does not come] within the FOIA ....").

**4.** *See also United States Dep't of State v. Ray*, —— U.S. ——, ——, 112 S.Ct. 541, 549, 116 L.Ed.2d 526 (1991) (Holding in Exemption 6 case that "[a]s we have repeatedly recognized, FOIA's 'basic policy of "full agency disclosure unless information is exempted under clearly delineated statutory language," ... focuses on the citizens' rights to be informed about "what their government is up to." Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose.' " (*quoting Department of Justice v. Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481 (*quoting Department of Air Force v. Rose*, 425 U.S. at 360–61, 96 S.Ct. at 1598–99))); *Navy Exchange*, 975 F.2d at 353 n. 2 ("Although *Reporters Committee* involved FOIA Exemption 7, its definition of the public interest in disclosure in FOIA cases is binding on us here, even though this dispute arises under FOIA Exemption 6."); *Navy Resale*, 958 F.2d at 1493 n. 2 (noting that *Reporters Committee* was an Exemption 7(C) case, but explaining that "*Reporters Committee* relied on the leading Exemption 6 case, *Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)"); *Veterans Affairs*, 958 F.2d at 508 ("We do not regard such statements as in conflict with the

*Committee* adds to this analysis is that the *only* public interest cognizable under FOIA is the interest of the citizenry in obtaining information about the activities of its government." *Navy Exchange*, 975 F.2d at 353.

The majority—like the Third Circuit, sitting en banc, and panels of the Fourth and Ninth Circuits—also attempts to distinguish *Reporters Committee* by pointing out that " '[t]hat case did not present an occasion to evaluate the [FLRS's] explicit policy favoring collective bargaining as in the public interest, nor the interrelated rights and responsibilities imposed by Congress on an exclusive bargaining representative.' " [5] *See* Maj. op. at 1113 (alterations in original) (*quoting Navy Ships*, 966 F.2d at 757).

Although I agree that *Reporters Committee* did not consider "the [FLRS's] explicit policy favoring collective bargaining as in the public interest," maj. op. at 1113, the language of section 7114(b)(4) and *Reporters Committee* makes this policy irrelevant. First, "[t]he broad cross-reference in 5 U.S.C. § 7114(b)(4)—'to the extent not prohibited by law'—picks up the Privacy Act unmodified." *Treasury*, 884 F.2d at 1457 (Ginsburg, J., concurring). "Nowhere in the [FLRS] does its language indicate that the disclosure calculus required by FOIA should be modified." *Veterans Affairs*, 958 F.2d at 512.

Second, *Reporters Committee*—in discussing "what [public interest] factors might *warrant* an invasion of [personal privacy]," *Reporters Committee*, 489 U.S. at 771, 109 S.Ct. at 1480—excluded from this consideration not only the *identity* of the requesting party, *see* maj. op. at 1114, 1115 n. 5, but also its purpose. *See Reporters Committee*, 489 U.S. at 711, 109 S.Ct. at 1480.

Our previous decisions establish that whether an invasion of privacy is *warranted* cannot turn on the *purposes* for which the request for information is made. Except for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request. Thus, although the subject of a presentence report can waive a privilege that might defeat a third party's access to that report, and although the FBI's policy of granting the subject of a rap sheet access to his own criminal history is consistent with its policy of denying access to all other members of the general public, the right of two press respondents in this case are no different from those that might be asserted by any other third party, such as a neighbor or prospective employer.

---

[5] Supreme Court's teaching in *Rose* [Exemption 6 case] and *Reporters Committee* [Exemption 7(C) case] that whether disclosure of a document is permitted under the FOIA, despite intrusions on privacy interests, is to be assessed solely in terms of 'the nature of the requested document and its relationship to the "basic purpose of the FOIA to open agency action to the light of public scrutiny." ' " (*quoting Reporters Committee*, 489 U.S. at 772, 109 S.Ct. at 1481 (*quoting Rose*, 425 U.S. at 372, 96 S.Ct. at 1604))); *Navy Ships*, 966 F.2d at 754–55 ("The Court [in *Reporters Committee* ] also relied upon an Exemption 6 case, *United States Dep't of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), to analyze the privacy interests in a rap sheet."); *Naval Communications Unit*, 941 F.2d at 56 ("The Supreme Court noted in *Reporters Committee* that the privacy language is broader under exemption 7(C) than under exemption 6. Nevertheless, apart from the degree of privacy protection, the Supreme Court clearly stated that the public interest in disclosure does not turn on the purposes for which the request was made or on the identity of the party requesting the information, but rather ... [on] 'open[ing] agency action to the light of public scrutiny.' " (citation omitted) (*quoting Reporters Committee*, 489 U.S. at 772–73, 109 S.Ct. at 1481)).

**5.** *See Navy Resale*, 958 F.2d at 1496 (" 'Nothing in [*Reporters Committee* ] suggests that the Court had considered and rejected the relevance of public interest objectives identified by Congress in other disclosure statutes.' " (alteration in original) (*quoting Treasury*, 884 F.2d at 1453)); *Commerce*, 954 F.2d at 997 ("[In *Reporters Committee* ], the Supreme Court considered a request for information made *solely* under the FOIA. No other federal statute was directly involved. Here, the Union requested the information under section 7114(b)(4)(B) of the FS Labor Statute, which directs the litigants to the Privacy Act which, in turn, directs them to the FOIA. We find this distinction critical ....").

*Id.* (citations omitted) (emphasis added). The public interest standard must be measured by "the core purpose of the FOIA as 'contribut[ing] significantly to the public understanding *of the operations or activities of the government.'*" *Id.* at 775, 109 S.Ct. at 1483 (alteration in original).

Because *Reporters Committee* controls "what [public interest] factors might warrant an invasion of [personal privacy]" under FOIA, it also controls disclosure of information requested under the FLRS.[6] Accordingly, I would deny the FLRA's application for enforcement of its orders and grant the agencies' cross-petitions for review.

---

6. The majority concedes, "if [under a *Reporters Committee* analysis] letting the public know what the government is up to is the only interest that may be considered in favor of disclosure, then the employees' privacy interests, however limited they may be, would nonetheless prevail, and would prohibit disclosure." Maj. op. at 1113.